Losing-, J.,
delivered the opinion of the court:
This suit is brought for the breach of two contracts made by the Government with the petitioners for the delivery of 600,000 bushels of grain.
And the court finds the facts to be., that on the 25th of November, 1864, the United States entered into the written contract with the claimants for corn and oats. While such contract was in execution, and on the 1st' December, 1864, large quantities of forage, which had been gathered at Johnsonville for the armies of the West and South, were consumed by fire.
At this time a large army, under General Thomas, was concentrated at Nashville, and was daily increasing by forces collected to repel the advance of the confederate army under General Hood, and to prepare for the operation of a large cavalry force, under General Wilson, upon the Southern States in rebellion.
These circumstances, combined with the fact that other contractors had failed to deliver grain at' other places from which it might have been drawn, and the interruption of expected mfeans of transportation, created an emergency for the immediate delivery of large amounts of forage, upon the fulfillment of which the success of our military operations in the West- and South and the safety of our armies 'depended.
In these circumstances General Thomas, the military commander of the department, ordered his quartermaster-general to procure the forage necessary immediately and at all events. And under these orders a verbal contract was made between the United States and the claimants for the duplication of the written contract, as to quantities and prices.
*478 The said verbal contract was the. most expeditious way in which the forage required by the emergency could have been obtained, and the claimants proceeded immediately to its execution, and, under that and the written contract, they delivered forage promptly and without any delay, until they were notified by the Quartermaster’s Department to withhold and forbear for a time- their deliveries,because the Department was restricted in storage-room.
By the success of our armies in the South and West the war was brought to a sudden and unexpected termination, and in consequence the grain contracted for and not delivered was not needed by the Government, and the quartermaster at Cincinnati was ordered by the War Department to notify contractors to deliver no more forage. And on the 10th of April, 1865, the claimants were notified that no more forage would be received from them under the contracts above specified, and thus further deliveries were prevented by the United States.
Of the forage contracted for under the two contracts above specified the Government thus refused and prevented the reception of—
1st. 150,000 bushels of shelled corn.
2d. 40,774 bushels of corn in the ear.
3d. 9,978 bushels of oats.
On the 10th day of April, when the claimants were notified . that further deliveries would not be received, the market price, of oats was 64 cents per bushel; the market price of shelled corn was 70 cents per bushel; the market price of corn in the ear was 70 cents per bushel.
And the difference between the contract price and the market value of said articles on said 10th day of April was-—
350,000x85 (155 — 70) shelled corn.$127,500 00
40,744x54 (124 — 70) corn in ear... 22,017 96
7,978 x 46 (110-64) oats.. 4,589 88
Amounting to... 154,107 84
As to the measure of damages, the rale has been repeatedly declared here to be the difference between the contract price and the market value at the time of the breach of the contract, and on this the judgment rendered is 'founded.
It was objected that the contract in this case did not comply *479 with the Act 2d March, 1861, (12 Stat. Ij., p. 220,) enacting that articles or services required in ease of exigency for immediate delivery or performance might be purchased or contracted for in open market; or with the statute of 2d June, 1862, requiring contracts to be in writing.
We think this case is governed exclusively by the fourth section of the Act 4ih July, 1864, (13 Stat. L., p. 394,) which is subsequent to the statutes above mentioned, and was made for cases like this, while the other statutes were made for other cases.
Th£ statute of 4th July, 1864, was enacted in the civil war, and for it. It was by express limitation to exist u during the present rebellion and one' year after.” It expired at the time limited, and has not been renewed. Its purpose was to reconstruct the Quartermaster’s Department, to adapt it to the extended services the civil war required. It contemplated and provided machinery forthe supply of armies for operation in the field, and for the vicissitudes to be encountered there. And the fourth section of the statute is a provision for emergencies, on which the safety of armies and the final issue of the civil war might depend, and which might thus involve the fate of the Union. Andinreferencetothis it gave the direction the subject suggested and made indispensable, viz, that in such emergencies of armies in the field the supplies should be procured “ in the most expeditious manner.” This is the language of the statute, and its single direction. Nothing is added to it, because nothing eonld add to its force, and anything added might in some way, possibly, trammel the execution of its purpose, and in this case the evidence is that the pressing and increasing need of the army of General Thomas, as well as of the army of General Sherman, was the subject of frequent and anxious conference between General Thomas and Ms staff, áhd resulted in imperative and repeated commands from him to his chief quartermaster to procure the supplies needed in “ the most expeditious manner possible.”
Now, the statute of 2d March, 1861, has no such special purpose. It was not made in time of war, for its inception goes back to 1809. It does not relate specially to service in the field, nor to military service, for in terms it applies to contracts in “ any department of the Government,” and is applicable to an emergency for stationery in the State Department, or for *480 blanks in the Post-Office Department, or for fuel in barracks, or for any other emergency that the failure of a contractor may make for the supply of anything needed in the ordinary routine of public business.
So the statute of 2d June, 1862, which requires contracts to be in writing, relates not specially to military service, but to all contracts made in the Department of War, of the Navy, and of the Interior; and it provides that the contracts must be in writing and signed by the parties at the end thereof, and a copy filed in the returns-office within thirty days, and, together with all bids, offers, and proposals, and copies of advertisements, be attached together by a ribbon and numbered numerically. These detailed provisions show that the statute is made in reference to the ordinary business of the Departments specified, and not to the special emergency contemplated in the fourth section of the statute of 4th of July, 1864, and which existed when these contracts were made, for then the army of General Sherman had begun its memorable march, and its base of operations on the western cities was defended by the army of General Thomas, and contractors had failed to furnish their supplies, and the want of food for man and beast was imperiling the operations that resulted in national safety; and in these circumstances all was saved by the literal execution of the statute, i. e., procuring the supplies in the most expeditious manner, which, on the evidence, was by these contracts.
The claimants are entitled to judgment for $154,107.84.