Hunt, J.,
delivered the opinion of the court:
The claimant entered into three written contracts with the government, on the 8th August, 1876, for the delivery of certain oats and corn at Binggold Barracks and Fort Brown, in Texas. The contracts were made under an advertisement and rvith the approval of the military officers in command of the Department of Texas and of the Military Division of the Missouri, and the claimant gave bond in the sum of $20,000, with satisfactory sureties, for the faithful performance of the obligations entailed upon them by the contracts.
Bach contract stipulated that the quantity of grain to be furnished was to be more or less than the number of pounds named, and the increase which the government might demand was not to exceed one-third of the quantity named.
Bequisitions for grain, when made under these contracts, continued to be regularly filled by the claimant. In May, 1877, there was still remaining to be furnished by him an aggregate of 43,126 bushels of corn and oats. On the 12th of that month the quartermaster at Binggold Barracks telegraphed the claimant, then at Austin, Tex., that his contract for oats was increased one-third, and requiring him to commence delivering them as soon as practicable. On the 14th, the quartermaster at Fort Brown telegraphed him to the same effect, and that the whole amount of his contract for that post would be required by the 30th June following.
On the receipt of these instructions, the claimant at once proceeded to New Orleans and there negotiated for and purchased the entire amount of grain thus ordered. A considerable portion was immediate^ shipped to Texas, but a part only of the shipment was accepted by the defendants. The balance of the grain *461 ■contracted for, made up of tbe portion of tbe shipment thus tendered and of the increased quantity ordered by telegraph -on the 12th and 14th of May, was refused. The reason for this refusal was that General Ord had modified his former orders, and had directed his post-commanders to receive only such an amount of grain as might be needed till November 1. This last order had the effect of diminishing the quantities called for in the three first contracts, and led to the refusal of a portion of the shipment last tendered and to the rejection of the whole of the increase that had been ordered.
In spite of repeated requests promptly made by the claimant, that the grain might be received, of his assurances that he had already engaged the whole amount ordered on the 12th and 14th of May and would not be released from his engagements, and notwithstanding his reiterated protests and appeals, the defendants persisted in refusing any further shipments and declined all further tender.
The claimant, having been paid for the grain delivered to and actually received by the defendants, now brings this suit to recover the amount of profit of which he has been deprived by the refusal of the defendants to allow him to proceed with and complete his contracts.
The findings of the court show that after deducting the market value of the grain at the prices prevailing at the time it was ordered by the government and was to be delivered, and the prices of transportation to the two points of destination mentioned in the contracts, the profit which the claimant would have realized would amount to the sum of $12,990.45.
There is no evidence in the case except that offered by the claimant. This establishes the contracts, their breach by the defendants, and his own ability and readiness and willingness to furnish the supplies contracted for.
It remains for us to consider the legal objections urged against the claimant’s right of recovery. It is argued that the claimant purchased the grain he was to furnish for delivery in the future ; and that by the law of Louisiana, where the claimant contracted for his purchases, such purchases were incomplete until the property was delivered.
■ It is an undoubted principle of the law of that State, as it is •of every other system of enlightened jurisprudence, that in the .sale of movable or personal property the thing sold is at the *462 risk of tire vendor until delivery. But this principle has no. application to the present controversy. The claimant was. bound to deliver to the defendants the amount of grain they contracted to buy from him and to obtain it when called for; but such delivery became unnecessary after their active breach of the contract by steadily refusing to receive it. In the face-of such repeated refusals the claimant was released from the-obligation of actually tendering the grain. It would have been an utterly vain and nugatory eeremony for him to have done sounder the circumstances. Lex neminem cogit ad vana. (8 La., 522; 2 Hen. Dig., 1021.)
If the defendants had adhered to their contract instead of abruptly modifying and receding from it, the claimant would have been compelled to furnish the full quantity of grain when required to do so. Failure of performance by him would have entailed heavy responsibility upon himself and his sureties. Upon the principle of reciprocity, which exists in all commutative contracts, it is just and lawful that the defendants should indemnify him for the advantage and profit of which, by their breach of faith and without any fault on his part, he has been deprived. (Cobb's Case, 7 C. Cls. R., 470; Bulkley’s Case, 7 id., 547; Mann’s Case, 3 id., 404; Adams v. United States, 1 id., 106; Moore & Boice v. United States, id., 90, 13 How., 334; United States v. Speed, 8 Wall., 77.)
It is therefore ordered, adjudged, and decreed that the claimant do have and recover judgment for the sum of $12,990.45.
Drake, Oh. J., was absent when this case Aras heard and took no part in the decision.